UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:24-cr-00063-DJC |
| Plaintiff, | |
| v. | ORDER |
| JEREMIAH I'AMAFANA SALANOA, | |
| Defendant. | |

It is a longstanding principle that access to counsel is a fundamental right of criminal defendants under the Sixth Amendment and necessary for the operation of a fair system of criminal justice. Defendant's Counsel, who is appointed and assigned to represent Defendant pursuant to the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A, has not received compensation for his representation since July 2025. Defendant asks that the Court find that the failure to compensate defense counsel violates this Sixth Amendment right.

The Court agrees that the United States Government's failure to provide adequate funding to pay CJA-appointed counsel fundamentally violates Defendant's rights to adequate representation under the Sixth Amendment. Defendant's Counsel was required to provide representation to Defendant despite the fact that for months he was not provided with resources to pay for investigators, experts, and other

1

support staff, or even to support himself.  Defendant's Counsel was thus placed in an entirely untenable position.  To expect Defendant's Counsel to adequately prepare for his client's defense while consistently denying him the tools to do so would be, in this Court's view, not only unconscionable, but also unconstitutional.

In the time since the filing of this motion and the issuance of this order, Congress has passed, and the President has signed, a continuing resolution that provides funds for both outstanding payments to CJA panel attorneys and ongoing operations.  This does not alter the Court's analysis as to whether a violation of Defendant's Sixth Amendment rights occurred.  But it does affect the Court's determination of the appropriate remedy for that violation.  For the reasons stated below, the Court finds that the appropriate remedy is to permit Defendant's Counsel whatever continuance is required to provide adequate representation to his client.

**BACKGROUND**

A complaint was initially filed against Defendant on February 24, 2025.  (ECF No. 1.)  Defendant was ultimately indicted on March 13, 2025, on three counts of distribution of fentanyl in violation of 21 U.S.C. § 841(a)(1), one count of distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1), and one count of possession of fentanyl with intent to distribute in violation of 21 U.S.C. § 841(a)(1).  (ECF No. 12.)  Current counsel was appointed to represent Defendant at his initial appearance on February 27, 2025.  (ECF No. 6.)  Defendant remains in custody at the time of this Order.

Funding for CJA counsel ran out in July 2025.  Defendant's Counsel states that "[p]ayments were expected to resume at the beginning of the new fiscal year on October 1, 2025[,]" but did not ultimately resume due to the lapse in government funding.  (Mot. (ECF No. 24) at 3.)  Due to the ongoing lapse in funding, however, Defendant's Counsel has not been paid since CJA funding ran out in July.  (*Id.*)

Defendant filed the present Motion on October 7, 2025.  (*See* Mot.)  The Motion is fully briefed, and argument was held on October 23, 2025.  (Mot.; Opp'n

2

(ECF No. 26); Reply (ECF No. 28); *see* ECF No. 29.)  The Court allowed Defendant's Counsel to file Supplementary Declarations (*see* ECF Nos. 31, 32), as well as permitted the Government to file a Supplemental Opposition (ECF No. 33) and Defendant to file a Supplemental Reply (ECF No. 34).  The Court heard additional oral argument on November 13, 2025.  (ECF No. 35.)

## LEGAL STANDARD

Under Federal Rule of Criminal Procedure 12(b), a "party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits."  Fed. R. Crim. P. 12(b)(1).  The Court has inherent supervisory powers to order the dismissal of prosecutions for three reasons: "(1) to implement a remedy for the violation of a recognized statutory or constitutional right; (2) to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and (3) to deter future illegal conduct."  *United States v. Matta-Ballesteros*, 71 F.3d 754, 763 (9th Cir. 1995).  An indictment can only be dismissed under the Court's supervisory powers where a defendant suffers "substantial prejudice" and "no lesser remedial action is available[.]"  *United States v. Chapman*, 524 F.3d 1073, 1087 (9th Cir. 2008) (quoting *United States v. Jacobs,* 855 F.2d 652, 655 (9th Cir. 1988) and *United States v. Barrera–Moreno*, 951 F.2d 1089, 1091 (9th Cir. 1991)).

## DISCUSSION

The Sixth Amendment guarantees that "in all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. Const. ament XI.  In *Johnson v. Zerbst*, 304 U.S. 458 (1938), the Supreme Court held that, unless waived, a federal criminal defendant must be represented by counsel.  That right was extended to the states in the more well-known decision of *Gideon v. Wainwright*, 372 U.S. 335 (1963), in which the Supreme Court held that this right requires the appointment of counsel for indigent defendants facing serious criminal charges.  Defendant argues that by failing to pay his attorney or authorize payment for

investigative or expert services, this right has been violated. The Government responds that because appointed counsel remained in this case despite the lack of payment, there can be no Sixth Amendment violation. The Government further points to several Circuit cases for the proposition that a lawyer must "subordinate his pecuniary interests and honor his primary professional responsibility to his clients in the matter at hand." (Opp'n at 4–5 (quoting *United States v. Walter-Eze*, 869 F.3d 891, 902 (9th Cir. 2017), and citing *United States v. Jeffers*, 520 F.2d 1256, 1265 (7th Cir. 1975)); *see also United States v. Vasquez*, No. 2:25-cr-00135-WBS, 2025 WL 2961906 (E.D. Cal. Oct. 20, 2025).)

The Government's argument ignores the realities of modern-day criminal practice where court-approved attorneys accept representation of multiple indigent defendants. These attorneys all accept appointment with the promise of payment and the provision of resources by which they can mount an effective defense on behalf of their clients. Cases involving retained counsel, or situations in which members of the local bar are appointed to represent specific defendants, are simply inapposite. If anything, the legislative history of the Criminal Justice Act of 1964 illustrates why failure to provide counsel with adequate resources violates the Sixth Amendment.

Criminal defendants in federal proceedings have enjoyed a right to counsel since 1938, *see Johnson v. Zerbst*, 304 U.S. 458 (1938), which was largely implemented by appointing pro bono counsel from the local bar. *See* Robert J. Kutak, *The Criminal Justice Act of 1964*, 44 Neb. L. Rev. 703, 705 (1965). This system proved inadequate, however, and in 1961, Attorney General Robert F. Kennedy appointed a committee, chaired by Francis A. Allen of the University of Michigan Law School, to study the problems facing indigent defendants. *Id*. at 716; *see also* John J. Haugh, *The Federal Criminal Justice Act of 1964: Catalyst in the Continuing Formulation of the Rights of the Criminal Defendant*, 41 Notre Dame L. Rev. 996, 997 (1966). The *Allen Committee Report*, as it came to be called, became the "framework for the Criminal Justice Act of 1964." Kutak, *The Criminal Justice Act of 1964*, 44 Neb.

L. Rev. at 716; see also H.R. Rep. No. 88-864, at 2994–95 (1963). As Attorney General Robert F. Kennedy noted in transmitting a draft of the Criminal Justice Act of 1964 to Congress, "[t]he response of lawyers to appointment by the court to represent the poor is one of the finest traditions of the American Bar; but the circumstances under which counsel in such cases must defend against skilled prosecutors with extensive factfinding resources at their disposal substantially reduce the likelihood for doing justice before the law." H.R. Rep. No. 88-864, at 2995.

The *Allen Committee Report* put it in even starker terms and highlighted the importance of compensating defense counsel and giving them access to paid investigators and experts. "The principle of adequate compensation for lawyers performing defense services is an <u>indispensable element</u> of federal legislation providing for a system of <u>adequate</u> representation." *Report of the Attorney General's Committee on Poverty and the Administration of Federal Criminal Justice* ("*Allen Committee Report*") xii (1963) (emphasis added). As the *Allen Committee Report* further explained:

> "[A]dequate representation" entails more than making lawyers available to those who would otherwise lack counsel. It includes also a range of services,–including pre-trial investigation, location of witnesses, obtaining of expert testimony and the like,–the absence of which in many cases may deprive a defendant of adequate defense even though a lawyer speaks for the accused in court.

*Allen Committee Report* at 4. Accordingly, the Committee concluded that the then-prevailing practice of requiring members of the bar to provide pro bono counsel did "not constitute a system of adequate representation for the financially deprived accused," *id*. at 39, and, in the Committee's estimation, was not "capable of constituting such a system" *id*. at 43.

Having observed the shortcomings in the system of pro bono counsel in providing adequate representation, the *Allen Committee* proposed, and Congress ultimately adopted, the Criminal Justice Act of 1964. Congress declared the Criminal

5

Justice Act was enacted "[t]o promote the cause of criminal justice by providing for the representation of defendants who are financially unable to obtain an adequate defense in criminal cases in the courts of the United States." Pub. L. No. 88-455, 78 Stat. 552 (codified as amended at 18 U.S.C. § 3006A). Although the rates have changed, then as now the Act required an attorney to be paid for their representation, 18 U.S.C. § 3006A(d), and permitted appointed counsel to obtain "investigative, expert, or other services necessary to an adequate defense," which would also be compensated, 18 U.S.C. § 3006A(e) (1964). The legislative history is clear that Congress believed adequate compensation was necessary to ensure an adequate defense.

Congress's conclusion finds ample support in the caselaw. The right to counsel encompasses not merely the physical presence of an attorney, but also the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685–86 (1984); *see also Wilbur v. City of Mount Vernon*, 989 F. Supp. 2d 1122, 1131 (9th Cir. 2013) ("Mere appointment of counsel to represent an indigent defendant is not enough to satisfy the Sixth Amendment's promise of the assistance of counsel."). In particular, the Supreme Court has recognized that the right to counsel is meaningless without adequate resources to mount an effective defense. *See Ake v. Oklahoma*, 470 U.S. 68, 77 (1985) (due process requires provision of basic tools of adequate defense). As the Ninth Circuit has observed, "the right conferred by the Sixth Amendment to effective assistance of counsel implicitly embraces adequate opportunity for the accused and his counsel to consult, advise and make such preparation for arraignment and trial as the facts of the case fairly demand." *Betschart v. Oregon*, 103 F.4th 607, 621 (9th Cir. 2024) (quoting *De Roche v. United States*, 337 F.2d 606, 607 (9th Cir. 1964)). Simply put, the right to counsel is meaningless without sufficient resources to mount an effective defense.

Having developed an elaborate system of paid, court-appointed representation, which is now decades old and well-established, Congress cannot

remove the funding aspect of the system and still expect criminal defendants to receive adequate representation. Rather, the months-long failure to provide funding for a defense violates the Sixth Amendment constitutional right to counsel. The Court concludes that the right to counsel is violated whenever counsel is denied payment or access to compensated investigative resources for a significant period. While this is likely true regardless of the exact factual circumstances, the record here supports Congress's original judgment that payment is required to ensure adequate representation.

As indicated by Defendant's Counsel in his declaration, the lack of funding has definite negative impacts on the ability of CJA panel attorneys to provide adequate representation. Counsel joined in the concerns raised by Defendant's Counsel in *United States v. Evanovich*, 2:24-cr-00079. (Leras Decl. (ECF No. 31) ¶ 6.) Counsel also notes the restrictions that a lack of funding places on investigation work and the review of discovery in this case. (*Id.* ¶¶ 12–14.) Counsel offered to provide an ex parte declaration providing additional details about the impediments to Defendant's adequate representation imposed by the failure to adequately fund the CJA panel. (*Id.* ¶¶ 14, 21.) This is ultimately unnecessary because the basic necessities of preparing an adequate criminal defense are readily understood without such a declaration. In any criminal case and here as well, investigations need to be conducted, discovery must be reviewed and discussed with clients, and experts must be consulted and retained. But without funding, defense attorneys are unable to fund investigators to conduct vital investigations, pay support staff to assist in reviewing discovery, and hire experts to provide their services. This is true both because the funds are not available to cover these costs and because third parties, such as paralegals, investigators, and experts, are naturally reluctant or unwilling to take on work on the speculative promise of future compensation.

Defendant's Counsel also represents that he has substantial outstanding vouchers for CJA representation. (Leras Decl. ¶ 20.) Counsel states that at the time

7

his declaration was filed, he was owed "nearly $118,000" across all CJA cases he has worked on, and that he has not been paid for any work conducted on this case. (*Id.* ¶¶ 20-21.) While it is true that there is a "presumption that the lawyer will subordinate his pecuniary interests and honor his primary professional responsibility to his clients in the matter at hand," *Walter-Eze*, 869 F.3d at 902 (quoting *Jeffers*, 520 F.2d at 1265), that presumption is inapplicable where there is a systematic failure to pay significant sums of money that were promised by the Government.

These facts illustrate precisely why adequate representation necessarily requires sufficient resources for counsel to mount a defense. Through Congress's failure to provide sufficient funding for CJA attorneys, Defendant was denied the means to adequately prepare a defense to the criminal charges against him. This was a denial of Defendant's Sixth Amendment right to counsel at a fundamental level.

It is also self-evident from the fact of this denial, as well as from the record, that Defendant suffered prejudice from this violation of his constitutional rights. As already noted, in order to prepare their clients' defense, criminal defense attorneys must undertake vital tasks such as reviewing discovery, conducting investigations, preparing trial strategy, and hiring experts. These are all basic tools necessary to provide Defendant with effective representations that have been meaningfully impeded by the longstanding and ongoing lack of funding for Defendant's Counsel. Defendant remains in custody, with criminal charges pending against him. As the Supreme Court has recognized, "[t]o deprive a person of counsel during the period prior to trial may be more damaging than denial of counsel during the trial itself." *Maine v. Moulton*, 474 U.S. 159, 170 (1985). While a trial date is not yet set in this matter, this is still an important time where Defendant's Counsel must accomplish vital tasks to adequately represent Defendant.

Moreover, despite payment for CJA counsel having stopped in July, the Government's prosecution efforts have continued unabated since that time. This means that while Defendant's Counsel was not receiving money to pay investigators,

staff, and himself, the Government was able to fully engage in continued investigation and trial preparation efforts without barriers. The United States Government's abdication of its duty to provide funding for Defendant's Counsel stands in stark contrast to the continued funding the prosecution has enjoyed. It is virtually impossible for Defendant not to have been prejudiced by such an unprecedented and glaring imbalance in the criminal justice system.

Given the violation of Defendant's constitutional rights and the prejudice Defendant faced because of that violation, the sole question that remains is what remedy is appropriate here. *See Chapman*, 524 F.3d at 1087. When considering an exercise of its supervisory powers for violations of a defendant's rights under the Sixth Amendment, the district court must "tailor[] relief appropriate in the circumstances to assure the defendant the effective assistance of counsel and a fair trial." *United States v. Morrison*, 449 U.S. 361, 365 (1981). The least intrusive available remedial action here is for the Court to grant Defendant whatever continuance Counsel needs to provide Defendant adequate representation. *See Chapman*, 524 F.3d at 1087.

Before funding resumed, dismissal without prejudice likely would have been warranted given the ongoing nature of the violation. However, now that the continuing resolution has become law, in the Court's view dismissal is no longer appropriate. Resources are now available to hire experts and other investigative services, and payments will resume to counsel. Given that the Sixth Amendment right to counsel is once again ensured, counsel would need to establish some ongoing prejudice to justify the extreme remedy of dismissal. The Court is uncertain what remedy dismissal without prejudice would provide at this stage, given the Government's ability to immediately refile. And the more extreme remedy – dismissal with prejudice – is not appropriate here. Such relief is only appropriate where there is "a clear basis in fact and law for doing so." *United States v. Isgro*, 974 F.2d 1091, 1097 (9th Cir. 1992) (internal citation omitted). Defendant has not made a showing that such a drastic option is merited. Thus, the Court finds that permitting Defendant's

Counsel whatever additional time is necessary for him to provide his client with adequate representation is the appropriate remedy.

## CONCLUSION

The Court reiterates and emphasizes that by this Order, the Court finds that Defendant's Sixth Amendment rights were violated by the failure to provide funding for Defendant's representation.  While the Court does not grant the remedies Defendant initially sought, the finding of that violation occurred is itself significant given the importance of the Sixth Amendment right to counsel.  "'Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive for it affects his ability to assert any other rights he may have.'" *United States v. Cronic,* 466 U.S. 648, 654 (1984) (quoting Walter V. Schaefer, *Federalism and State Criminal Procedure,* 70 Harv. L. Rev. 1, 8 (1956)).  To ensure a functioning criminal justice system, the political branches must ensure that adequate resources are available for a criminal defendant to mount his or her defense.  Though the Court finds that the remedy of dismissal is not warranted here, it may well be appropriate should a further lapse occur in the future, depending on the particular facts at hand.

Accordingly, IT IS HEREBY ORDERED that Defendant Jeremiah I'Amafana Salanoa's Motion to Dismiss (ECF No. 26) is GRANTED IN PART and DENIED IN PART. Counsel for Defendant shall be granted whatever continuances Counsel requires to fulfill his obligations to the Defendant, consistent with the Sixth Amendment to the Constitution.

IT IS SO ORDERED.

Dated:    **November 17, 2025**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE